YouNG, Justice, [*189] delivered the opinion of the court; This was an action of debt, commenced in the Pike circuit court, by David B. Bush, school commissioner of Pike county, for the use of the inhabitants of township five [5] south, range six [6] west of the fourth principal meridian, against the defendants, Stephen Shipman, James Shipman, and Charles T. Brewster, on five several bonds for the payment of money, which are described in the declaration as follows : the three first are dated March 6, 1838, one for the sum of $64,604, and the other two for the sum of $47.43-4 each, payable on or before the 3rd day of May, 1839, with interest at the rate of twelve per cent, per annum, from the 3rd day of May, 1838, until paid; and the remaining two dated May 3rd, T837, each for the sum of $88.33, payable one year after date, with twelve per cent, interest per annum, payable semi-annually in advance, from the date of said bonds until paid —making together, exclusive of interest, the gross sum of $336.13. To this action the defendants pleaded specially, that the bonds declared on were given for the payment of money due to the school fund of township five [5] south, of range six [6] west, in Pike county aforesaid, and that on the 11th day of June, 1842, and before the commencement of the suit, one of the defendants (Shipman) tendered and offered to pay to Joseph Jackson, treasurer of the township aforesaid, the sum of $333, of the notes of the State Bank of Illinois, in discharge of the said debts and interest due thereon, which the said treasurer refused to receive. The defendants also brought the like amount of the notes of the State Bank of Illinois into court, and offered by their said plea to pay the same to the plaintiff, or to Jackson, as treasurer, if either of them would receive the same; and concluded by praying judgment of the court as in cases of tender, etc. To this plea there was a general demurrer and joinder. The circuit court overruled the demurrer, and the plaintiff refusing to reply further to the defendants’ plea, judgment was given against him in bar of his said action, and also for the costs of the suit; and an order made, requiring the defendants to deposit the bank notes, which had been tendered by their plea with the clerk of that court, for the use of the plaintiff, or the treasurer of the township; which was done. From which judgment, and the judgment of the court overruling the demurrer, the plaintiff took an appeal to this court. The only question presented by the pleadings in the court below, and the errors assigned in this court is in reference to the defendants’ right to discharge their said several liabilities, by a payment or tender in the notes of the State Bank of Illinois. It is provided by the act concerning the payment of revenue, and for other purposes, approved January 1'6, 1836, “that the bills of the State Bank of Illinois and branches shall [* 190] be received in payment of the revenue of this state, and the different counties in the state : and in payment of college, school and seminary debts and interest: with the condition, “that if at any time hereafter, the governor, auditor, and treasurer shall be of opinion, that there will be danger of loss, by receiving the bills of the State Bank as aforesaid, they are hereby authorized arid required to' cause a notice to be published in the newspaper printed by the public printer, and all other newspapers in the State, prohibiting any further reception of said bills, after the day named in such notice, for the uses and purposes aforesaid; and after the day named in such notice, the said bills shall not be received, until otherwise directed by. law.” The facts set forth in the plea, which are not denied, show that the bonds in question were given for the payment of money due to the school fund of township five [5] south, of range six [6] west, in Pike county, after the passage of the act of 1836, authorizing payment to be made in the notes of the State Bank of Illinois, and that the original tender was made after the bonds became due, and before the proclamation of the governor forbidding the receipt of such notes by the plaintiff as commissioner, or by Jackson, as treasurer of the township. As a ground for the refusal to receive State Bank paper, the plaintiff’s counsel insisted that since the incorporation of this township for school purposes, with its due proportion of property and funds, confided to the management of trustees, according to the provisions of the several acts on that subject, the legislature has no power to direct that any portion of such school funds shall be received in anything but gold or silver coin; and that, consequently, so much of the act of 1836, under which the tender was made, as authorizes payment in the notes of the State Bank, is repugnant to the constitution of the United States, and void. This doctrine, when applied to private corporations, is unquestionably correct; the act of incorporation in such cases being regarded as a contract between the government and the corporators, which the legislature may not repeal orimpair, so long as the latter keep within the limits of their charter. Dartmouth College v. Woodward, 4 Wheat. 318 ; while on the other hand, the doctrine is equally well settled, in respect to public corporations, created for public purposes, that the legislature has the exclusive right, as trustee of the public interest, to regulate, control, and direct the corporation, and its funds and franchises, for the reason that the whole interest and franchises are given by the act of incorporation, for the public use and advantage. We consider an incor- ■ porated township, for common school purposes, under our system, as a public corporation, or rather as a quasi corporation. Thus in the state of New York, each county and the supervisors [* 191] of a county, the town officers, and commissioners of loans, each town and the supervisors of towns, the overseers of tbepoor, and the superintendents of the poor, the commissioners of common schools, the commissioners of highways, and trustees of school districts are all invested with corporate attributes sub modo. The supervisors of the county can take and hold land for the county ; and all the several bodies are made capable of suing and of being sued, in their corporate capacity. So that every county and town is a body politic for certain purposes. So also, at common law, every parish or town was a corporation for lo.cal necessities; and the inhabitants of a county or hundred might equally be incorporated for special ends. 2 Kent’s Com. 278, and the English authorities there cited. In 2 Kent’s Com. 278, the learned commentator says, “ besides the proper aggregate corporations, there are others which are sometimes called quasi corporations ; as where the inhabitants of any district, such as counties, towns and school districts, are incorporated by statute, with only particular powers and all these corporations are considered and treated as subject to legislative action and control. The first ordinance of congress for ascertaining the mode of disposing of the public lands in the north western territory, passed May 20, 1785, declared, “ that lot numbered sixteen should be reserved in each township, for the maintainance of public schools within said township.” And the fifth section of the act of congress entitled “an act making provision for the disposal of the public lands in the Indian territory, and for other purposes,” passed March 26, 1804, provides, “ that section sixteen shall be reserved in each township for the support of common schools within the same.” At that time Illinois was a part of the Indian territory, as the separation did not take place until. 1809. By the compact between the United States and the state of Illinois, upon the admission of the latter into the Union, it is agreed, among other things, that section sixteen in every township shall be granted to the state for the use of the inhabitants of such township, for the use of schools; and that three-fifths of the net proceeds of the sales of the public lands lying within the same, shall be appropriated by the legislature of the state, for the encouragement of learning, of which one-sixth shall be exclusively bestowed on a college or university, etc. Besides these, other means have also been added for the support of the common school system generally in the state, which need not be mentioned, to settle the principles involved in the present controversy. In the case of Bradley v. Case, 3 Scam. 603, this court has already decided, that the legislature has full power to authorize a sale of the sixteenth or school sections of land in this state, and that a promissory note given to a commissioner of school lands, for the purchase money of the same, is founded upon a good and valuable consideration, and obligatory upon the maker of the note; and that the true construction to be given to the [* 192] compact between the United States and this state, in relation to the sixteenth sections, is, that they may be leased or sold, as the legislature shall think most beneficial to the people. The same principle was subsequently recognized in the case of Barger et al. v. Jones, Commissioner, etc., 3 Scam. 613. The grant of the sixteenth section is made directly to the state, for the use of the inhabitants of the township, for the use of schools. It is indeed a sacred trust, and the state, as trustee, should, by proper legislation, see that it is faithfully executed. We think, therefore, in respect to such quasi corporations, as exist only for public purposes, as in the present instance, that the legislature has an unquestionable right to change, modify, enlarge, restrain, or destroy; and may exercise a superintending control over all their money and other property; securing, however, as a matter of good faith, the effects of the corporation, for the use of those for whom it was donated or purchased. If this position be correct, it follows, as a necessary consequence, that the legislature may also, from time to time, direct in- what manner the school fund shall be loaned, upon what security, at what rate of interest, in what currency they shall be received, and by whom they shall be applied. It is the opinion of the court, therefore, that the tender in this case, in the notes of the State Bank of Illinois, was authorized by law, and that the plaintiff is bound to receive the same in payment. The judgment is affirmed. Shields, Justice, delivered the following dissenting opinion:. Without admitting or denying the absolute power of the legislature over the school fund, I conceive that the obligors, having the election of paying in money or specific articles, must have paid or tendered the specific articles, at the time the notes became due, and by neglecting to do so, the power of election was gone, and the debt could only be discharged in money. Morris v. Edwards, 1 Hammond 189. Again: although debts due the school fund were dischargeable in bank notes, yet it must be bank notes at their value, according to the legal and constitutional standard, and not according to their stamp. Debts receivable in wheat could only be discharged by the delivery of wheat, according to its value in money, and bank notes have no legal exemption from the operation of the same rule. I think the judgment should be reversed. Catón, Justice, said he concurred in the views expressed by Justice Shields. Judgment affirmed.